JOHN W. WOOTEN *v*. MOBILE & OHIO RAILROAD COMPANY.

1. EVIDENCE. *Private records.*

> Private records are not admissible in evidence in the absence of all
> showing that they were fairly and honestly kept and the entries
> therein made contemporaneously, or nearly so, with the matters
> of fact which they purport to record.

2. TRIALS. *Peremptory instruction, when proper.*

> Where the court would set aside a verdict for a party because of
> the insufficiency of the evidence, a peremptory instruction for the
> adverse party is proper.

FROM the circuit court of Noxubee county.

HON. ROBERT F. COCHRAN, Judge.

Wooten, the appellant, was plaintiff in the court below; the railroad company, the appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

The suit, begun in the court of a justice of the peace, was for damages alleged to have resulted from unnecessary delay in the transportation of cattle, the mistreatment of the animals, and overcharges for grain fed to them while in transit.

The case having been appealed to the circuit court, on the trial there it was shown that the appellee company accepted from the appellant, at Brooksville, Mississippi, on its line of railway, a carload of cattle for shipment via Meridian, Mississippi, to New Orleans, Louisiana. The appellee, as initial carrier, in compliance with the contract of shipment, delivered the car of cattle, at Meridian, to a connecting carrier, the New Orleans & Northeastern Railroad Company, which transported the cattle from Meridian to New Orleans, and delivered them to the New Orleans Belt Line Railroad Company, and the Belt Line Company carried them to destination, the city stock yards.

Appellant testified that he loaded the cattle at Brooksville at eleven o'clock P.M. on October 14, tying them securely in the car for safety in transportation, but did not see them from the time they were placed in the car at Brooksville until eight o'clock A.M. on October 16th, when in the possession of the Belt Line Railroad Company at the stock yards in New Orleans; he then discovered that some of the cattle had been injured since he saw them at Brooksville, and they died shortly afterwards. Appellant further testified, from his experience with former shipments over the same route, that the car should have reached New Orleans in thirty hours after leaving Brooksville; but the one in question was delayed a few hours beyond that time and because thereof he had been forced to pay unnecessary stock feed bills which, however, were presented, not by appellee, but by the New Orleans & Northeastern Railroad Company, and were voluntarily paid by plaintiff.

The appellee showed that there was no delay in the transportation of the cattle from Brooksville to Meridian or in their delivery to the connecting carrier. Over the objection of appellant, appellee was allowed to introduce in evidence the interchange records kept by it in its Meridian office which showed that the car was, upon its arrival at Meridian, promptly placed on appellee's interchange track and billing therefor delivered to the connecting carrier. Appellee's chief clerk at its Meridian office, as a witness over objections of appellant, testified that if anything wrong existed at the time the car was interchanged the appellee's records would have shown it; that the entries on the record in regard to the car were made at the time of the transaction by another, appellee's interchange clerk, who was not at the time of the trial in the service of appellee, but was absent from the state; and that witness knew nothing about the car save what he learned from the records; and the records had always been accepted by both carriers as correct. Appellee, over objection of appellant, also introduced as a witness in its behalf the yardmaster of the New Orleans & Northeastern Railroad Company,

who, from the interchange records of his company, testified that the cattle were received on schedule time and in good condition from appellee at Meridian and promptly shipped to New Orleans. This witness did not keep the books, and had no personal knowledge of the facts disclosed by their entries; nevertheless, the entries were read to the jury.

*J. E. Rives,* for appellant.

It was error for the trial court to allow the appellee to introduce in evidence its interchange records showing its interchange of cars with the New Orleans & Northeastern Railroad Company at Meridian. And it was error to allow the head clerk of appellee's Meridian office to testify about the contents of the records. He did not make the entries thereon nor see them made. His only testimony to establish their accuracy was to say that he had never heard their correctness disputed by either appellee or the connecting carrier.

This court has never allowed a witness to testify to the contents of his own books if they are in existence. The books must speak for themselves; and even then not until after proof that they were correctly kept and the entries made in usual course of business at the time the recorded facts transpired. *Bookout* v. *Shannon,* 59 Miss., 378; *Chicago, etc., Railroad Company* v. *Provine,* 61 Miss., 288. Yet, in this case, the lower court permitted a clerk of appellee, upon the introduction of records kept by another clerk, to testify therefrom about things of which the witness was in total ignorance.

Even if, by some reasoning or authority unknown to us, it be held that the records were admissible because kept by the appellee, certainly they should not have been admitted in evidence until their authenticity was supported by the testimony of the absent interchange clerk, who had made the entries and who kept the books. *Briggs* v. *Rafferty,* 14 Gray (Mass.), 525. It will be noted that appellee never attempted to account for the absence of this interchange clerk.

The trial court further erred in allowing the appellee to intro-
duce in evidence through its witness, the yardmaster of the New
Orleans & Northeastern Railroad Company, the interchange
records of that company.   These were independent records of
transactions with appellee, made in the absence of appellant.
The witness was unable, of his personal knowledge, to say what
was the actual condition of the cattle at any time while in
Meridian; nor could he say of his knowledge whether the rec-
ords were correctly kept, for he had nothing to do with their
keeping.

The trial court should not have granted the peremptory
instruction in appellee's favor.   The records alone controverted
plaintiff's testimony.   It was not for the court to pass upon the
sufficiency of the records, even if held competent as evidence.
This court has decided that while the competency of books of
account is for the court, their weight as evidence is for the jury
*Bookout* v. *Shannon, supra.*

Even if appellee were not liable for damages for the injuries
to the cattle, the granting of the peremptory instruction was
error, because it was not denied by appellee that appellant paid
the extra feed bill incurred at Meridian, and caused by appellee's
failure to have the cattle promptly transferred to the connecting-
carrier in time for prompt transportation to New Orleans.   The
feed bill in evidence shows that the cattle were not turned over
to the connecting carrier promptly, for it shows on its face that
they remained in Meridian long enough to be fed, when appellee
should have delivered them at once to the connecting carrier.
The court had no right to give peremptory charge upon this item
in appellant's claim against appellee.

*J. M. Boone,* for appellee.

Upon the appellant's own showing, the appellee was entitled
to the peremptory instruction.   Plaintiff testified that the cattle
were found in damaged condition while in the hands of the Belt
Line Railroad Company in New Orleans, being the third carrier

which handled the car of cattle since appellant last saw his animals at Brooksville. The presumption is that they were damaged by the delivering carrier. *Railroad Company* v. *Jones,* 100 Ala., 263; *Mobile & Ohio Railroad Company* v. *Tupelo Furniture Company,* 67 Miss., 35 (s.c., 7 South. Rep., 279).

Had appellant sued the delivering carrier, he would have been entitled to the presumption that the New Orleans & Northeastern Railroad Company damaged the property. But as he sued the initial carrier, he assumed the burden of proving that the damage was the result of the initial carrier's negligence, and is not aided by any presumption of law in this respect.

As the evidence is silent as to where the damage actually occurred, the appellee was entitled to the peremptory instruction. Even if the trial court erred in admitting the records of the two railroads as to the transactions at Meridian, the rights of appellant were not prejudiced thereby. If appellant had made out a *prima facie* case, the rest of appellee's evidence was sufficient to bar his right to a recovery. But appellant had not made out a *prima facie* case, because there was no evidence to show that the cattle were damaged while in the possession of appellee. Plaintiff never saw the cattle from the time he left them at Brooksville until they were in the possession of the Belt Line Company in New Orleans, and he could not tell how or when they were damaged.

As regards the question of delay, the cattle left Brooksville about eleven o'clock P.M., October 14th, and reached New Orleans some time during the night of October 15 or the morning of October 16 before eight o'clock. Plaintiff says the usual time for transportation is about thirty hours. It is evident, since the cattle had reached New Orleans, been unloaded, watered and fed, reloaded on the car and transported by the Belt Line Company to the stock yards all before eight o'clock A.M. of October 16th, that the limit of thirty hours had been but slightly exceeded, and that there was no delay in the transportation or handling of the shipment. If there was no delay, no

claim can be made by appellant for repayment of the feed bills
paid by him.

The only other question in the case is whether the court erred
in allowing the witnesses for appellee to testify in regard to the
entries made on the records of the two carriers at Meridian.
While this question is immaterial in view of the correct ruling
of the court in granting the peremptory charge against appellant
because of insufficiency of evidence, yet it was not reversible
error to admit in evidence the entries.    It is held in *Bookout* v.
*Shannon,* 59 Miss., 384, the case cited by appellant, that when
the party in interest introduces evidence as to the authenticity
and correctness of the books of account, sought to be introduced,
satisfactory to the presiding judge, and the books are unobjec-
tionable and apparently fair, they may be admitted as evidence
of the account.    And the language of the court in *Chicago, etc.,*
*Railroad Co.* v. *Provine,* 61 Miss., at p. 292 of the opinion, also
cited by appellant, states practically the same language.

As regards appellant's contention that the stock feed bill ought
to have carried the case to the jury, we say the feed bill was pre-
sented to appellant, not by appellee, but by the connecting
carrier, the New Orleans & Northeastern Railroad Company;
and appellee had nothing to do with it.    While the feed bill is
for cattle feed at Meridian, and is signed by the agent of the
connecting carrier, whose yardmaster testified that the cattle
were neither fed nor unloaded at Meridian.    If errors were
made by the New Orleans & Northeastern Railroad Company in
presenting appellant with the feed bill and collecting payment
thereof, appellee was not responsible for it.

WHITFIELD, C. J., delivered the opinion of the court.

The action of the court in admitting the interchange of rec-
ords, the private records kept by a private corporation, was mani-
festly erroneous.    *Chicago R. R. Co.* v. *Provine,* 61 Miss., 288.
But, with this evidence excluded, there remains nothing to sup-
port a verdict for plaintiff.    It would have been the duty of the

court, if it had submitted this case to a jury on the evidence offered by the plaintiff, and the jury had rendered a verdict for the plaintiff, to have set that verdict aside, and this is the best test as to whether a peremptory instruction could have been given for the defendant.

*Affirmed.*